IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEPHEN McELROY,                §
                                §
            Plaintiff,          §
                                §
v.                              §       CIVIL ACTION NO. H-04-2484
                                §
R. JAMES NICHOLSON,             §
                                §
            Defendant.          §

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant's Motion to Dismiss Plaintiff's Claims of Retaliation and Demotion (Docket Entry No. 18) and Defendant's Motion for Summary Judgment (Docket Entry No. 19). Plaintiff has not filed a response to either motion. The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the motions will be granted.

## I.  Case Background

Plaintiff, a white male, began his employment as a police officer at the Veterans Affairs Medical Center ("VAMC") in October of 1991.[1]  In April of 2002 a vacancy announcement was posted for

---

[1]Appendix of Exhibits, Docket Entry No. 20 ("Appendix"), Ex. 8, "Sworn testimony of Stephen McElroy," p. 3.

Supervisory Police Officer.[2]   The announcement disclosed that Police Chief Larry Forde ("Chief Forde") was the selecting official.[3]  Consistent with VAMC policy, an advisory committee was appointed by Adam Walmus ("Walmus"), Associate Director of the VAMC, in consultation with Chief Forde.[4]   That committee was comprised of Susan Dierker,[5] Rosie Bostik,[6] Larry Steward,[7] Myron Thomas,[8] and Ben Lima.[9]  The committee interviewed all qualified candidates, including Plaintiff.  The committee recommended that Phillip Prater, a younger black male, be promoted.[10]  On August 16, 2002, Prater was notified that he was selected for promotion.[11]  On the same date, Plaintiff was notified of his non-selection.[12]

---

[2]Appendix, Ex. 9, "Vacancy Announcement."

[3]Appendix, Ex. 4, "Declaration of Larry Forde," p. 1.

[4]Appendix, Ex. 5, "Declaration of Adam Walmus," p. 1.  Walmus averred that all applicants for supervisory positions were to be interviewed by a panel comprised of VAMC employees.

[5]Dierker, a white female, was employed as Nurse Executive and was appointed chairperson of the committee.  She was over the age of fifty when she served on the committee.  See Appendix, Ex. 5, Declaration of Adam Walmus; Ex. 7, Sworn Testimony of Susan Dierker, p. 2.

[6]Bostik, a black female, was employed as a psychologist at the VAMC.  See Appendix, Ex. 5, Declaration of Adam Walmus.

[7]Steward, a white male, was employed as a health systems specialist at the VAMC.  See Appendix, Ex. 5, Declaration of Adam Walmus.

[8]Thomas, a black male, was a supervisory police officer at the VAMC, holding the rank of captain.  See Appendix, Ex. 5, Declaration of Adam Walmus.

[9]Lima, a Hispanic male, was a supervisor in the food service department at the VAMC.  He interviewed only the first three applicants and did not participate in the committee's recommendation.  See Appendix, Ex. 10.

[10]See Plaintiff's Complaint, Docket Entry No. 1, ¶ 10.

[11]Appendix, Ex. 11.

[12]Id.

-2-

Plaintiff was fifty-five years old at the time of his non-selection.

## A.   First Board of Investigation

On August 23, 2002, a wheelchair-bound VAMC patient complained that Plaintiff had locked a pedestrian gate on Almeda Road,[13] denying the patient re-entry to the VAMC property despite calls by the patient and two other wheelchair-bound patients on the scene that Plaintiff wait before locking the gate.  The patient was approaching the gate and was only ten to fifteen feet away from the gate at the time.[14]  Plaintiff also ignored calls to reopen the gate after he had locked it, stating that everyone knew that the gate was to be locked at 7:00 p.m.  The nearest open gate was a significant distance away.

On September 4, 2002, an administrative Board of Investigation ("BOI") was appointed by the Medical Center Director to investigate Plaintiff's alleged disrespectful conduct towards the veteran.[15] Michael Spratt, a VAMC employee in the Education Service Line, was appointed chair of the board.  Myron Thomas, a VAMC police captain, and Azzie Watts, a VAMC employee in the Mental Health Care Line, were appointed as board members.  The BOI interviewed the complaining veteran and two eyewitnesses.[16]  On September 19, 2002,

---

[13]The gate was locked at 7:00 p.m. every day.

[14]See Appendix, Ex. 12.

[15]See Appendix, Ex. 13.

[16]See Appendix, Exs. 14, 15, and 16.

Plaintiff was notified that a BOI had been convened and was directed to furnish information to the board about the gate-locking incident.  On October 3, 2002, Plaintiff met with the board and denied any knowledge of the events reported by the witnesses.[17]

On November 6, 2002, the BOI concluded that Plaintiff had acted disrespectfully by locking the gate when he saw the veteran attempting to reach the gate before it was locked, and intentionally subjected the veteran to an unsafe condition by failing to provide a safe ingress to VAMC property.[18]  In its decision the board noted that Plaintiff was hostile and uncooperative during its investigation.  The board recommended to the Medical Center Director that Plaintiff receive appropriate discipline to prevent a reoccurrence of this type of behavior.[19]

On November 26, 2002, the Medical Center Director approved the recommendations of the BOI.[20]  On December 11, 2002, the Medical Center Director notified Plaintiff that the complaint investigated by the BOI had been sustained and that the matter would be referred to the Chief of Police for appropriate action.[21]

---

[17]See Appendix, Ex. 18.

[18]See Appendix, Ex. 19, pp. 4-5.

[19]Id., p. 5

[20]Appendix, Ex. 20.  The Director also recommended that Plaintiff be instructed to avoid contact with the parties involved in the investigation, that two signs be posted at the pedestrian gates stating hours of use, that video surveillance be restored to the gates, and that the video tapes be maintained for a period of one month before recycling.

[21]Appendix, Ex. 21.

-4-

**B.    Second Board of Investigation**

On August 24, 2002, a wheelchair-bound patient in his late 70's asked an ambulatory veteran for assistance in moving from a bench back into his wheelchair.  The ambulatory veteran responded that he could not help because of his recent knee replacement surgery but he would find someone who could assist him.  The ambulatory veteran went to the VA police office seeking help.  He knocked on the window and got an officer's attention.  The officer pointed to a sign on the door and walked away.  The patient knocked several more times and the officer responded as before.  The officer finally opened the door and asked, "What the f-k do you want?"  The patient explained that a man needed help.  The officer asked what color the man was.  The veteran told him that the color did not matter and an old man needed help.  The officer returned with the ambulatory veteran and put the wheelchair-bound man into his wheelchair.  The ambulatory patient complained that the officer treated the man very roughly.[22]  Plaintiff was later identified as the complained-of police officer.

On September 4, 2002, a BOI was convened to investigate this allegation of unprofessional behavior and use of profanity to a veteran.[23]  The same panel was appointed as in the earlier incident.[24]  The ambulatory veteran was interviewed on September 12,

_____

[22]Appendix, Ex. 22.

[23]Appendix, Ex. 23.

[24]Id.

-5-

2002.[25]  Plaintiff was notified that a BOI had been convened to investigate this incident on September 19, 2002.[26]  The BOI took testimony from the ambulatory veteran and Plaintiff.[27]  Plaintiff denied any recollection of the incident.[28]

On November 13, 2002, the BOI concluded that the ambulatory veteran's testimony was credible in light of its detail and partial corroboration by another police officer.[29]  The board noted that Plaintiff was hostile and uncooperative during the investigation.[30] The BOI recommended that the Medical Center Director take appropriate action in response to this incident.  On November 15, 2002, the Medical Center Director notified Plaintiff that the allegations of unprofessional behavior and use of profanity to a veteran had been sustained and would be referred to the Chief of Police for appropriate action.[31]

**C.   EEO Complaint**

On September 19, 2002, Plaintiff made initial contact with an EEO counselor, complaining of "failure to promote," and "harassment

---

[25]Appendix, Ex. 24.

[26]Appendix, Ex. 25.

[27]Appendix, Exs. 24, 26.

[28]Appendix, Ex. 26, p. 6.

[29]Appendix, Ex. 27, p. 1.

[30]Id.

[31]Appendix, Ex. 28.

(nonsexual)" on the basis of age and race.[32]  In his informal complaint, Plaintiff stated that he had been harassed by Chief Forde when he promoted a junior officer, Phillip Prater, to a supervisory position.[33]  Plaintiff complained that no white officer had been promoted in the past twelve years.  He also stated that he had been subjected to a hostile work environment.   In his complaint, Plaintiff requested that Chief Forde be removed from his position and that either Prater be demoted to his lower position or Plaintiff be promoted with two years back pay.[34]

On October 18, 2002, the VA acknowledged receipt of Plaintiff's allegations of discrimination and informed Plaintiff that he had fifteen calendar days to file a formal complaint of discrimination concerning those allegations.[35]  On October 29, 2002, Plaintiff filed his formal complaint of discrimination.[36]   On

---

[32]Appendix, Ex. 29.

[33]Id.

[34]Id.

[35]Those allegations as stated in the notice were (1) failure to promote (8-16-2002), (2) harassment (non-sexual)/hostile work environment (no date), and (3) administrative board of review (10-3-2002).  Plaintiff was admonished that if those allegations were not correctly reported, he had five days from receipt to notify the EEO counselor.  Appendix, Ex. 29.  The record does not reflect that Plaintiff made any objection or amendment to the allegations.

[36]Appendix, Ex. 1.  In addition to the complaints made in his informal complaint, the formal complaint included a complaint that he was [improperly] used as a shift coordinator and then not promoted.  The formal complaint also made general complaints that junior officers were promoted over the recommendation of advisory boards and supervisors, that suggestions from white officers were ignored, that black officers received monetary awards, that white officers were not chosen for special assignments, and that a junior black female officer met with a promotion board even though she had not applied for the position.

February 7, 2003, Plaintiff was notified that only two of his allegations, the August 2002 failure to promote and non-sexual harassment by convening boards of investigation, were accepted for investigation.  On March 26, 2004, the Defendant issued its final agency decision.

Plaintiff timely filed this lawsuit on June 25, 2004, claiming that Defendant discriminated against him on the basis of his race and age by refusing to promote him three times in 2002, and retaliated against him for filing EEO complaints by initiating steps to terminate his employment, and ultimately demoting him. Plaintiff also alleges that Defendant subjected him to a hostile work environment.

## II.  Legal Standards

### A.  Motion to Dismiss Standard

Defendant has moved to dismiss several of Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  A Rule 12(b)(1) motion allows a party to challenge the subject matter jurisdiction of the district court to entertain the complaint, Fed. R. Civ. P. 12(b)(1), while a motion under 12(b)(6) seeks dismissal of the complaint because it fails to state a legally cognizable claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  Dismissal under either rule is appropriate only when it appears beyond a doubt that the plaintiff will be unable to prove any set of facts in support of its claim

for relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases:  "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Id.  The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005) (quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

When considering a Rule 12(b)(6) motion to dismiss, the court construes the allegations in the complaint liberally in favor of the pleader and accepts as true all well-pleaded facts.  Hermann Holdings Ltd. v. Lucent Tech. Inc., 302 F.3d 552, 558 (5th Cir. 2002).  The court may not rely on conclusory allegations or legal conclusions disguised as factual allegations.  Jeanmarie v. United States, 242 F.3d 600, 602 (5th Cir. 2001).  However, when the moving party attaches matters outside the pleadings in support of his motion to dismiss, the motion must be treated as one for summary judgment.  Fed. R. Civ. P. 12(c).  Thus, the present motion must be considered under Fed. R. Civ. P. 56.

**B.    Summary Judgment Standard**

Summary judgment is warranted only when the evidence presented to the court fails to raise any genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002). A fact is "material" if the relevant substantive law identifies it as one that may reasonably affect the outcome of the case.  Liberty Lobby, 477 U.S. at 248; Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).

The movant must inform the court of the basis for a grant of summary judgment by identifying relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, and affidavits on file that demonstrate the absence of genuine issues of material fact.  Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the movant satisfies its burden, the adverse party must go beyond the pleadings and produce competent evidence that demonstrates genuine issues of material fact do exist, which must be resolved by a trier of fact.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. However, to withstand summary judgment, the adverse party must show

-10-

more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Likewise, conclusory statements, unsubstantiated assertions, and speculation are not sufficient to raise material fact issues for trial. TIG Ins. Co., 276 F.3d at 759. When deciding whether the evidence creates a fact issue, the court resolves all doubts and draws all justifiable inferences in favor of the party opposing the motion. Liberty Lobby, 477 U.S. at 255; Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).

### III.  Analysis

**A.  Defendant's Motion to Dismiss**

In his pending motion to dismiss, Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to the proposed removal/demotion and retaliation claims.

A federal employee's exclusive redress for unlawful discrimination experienced in the workplace is provided in section 717 of Title VII, 42 U.S.C. § 2000e-16(a)-(e).  Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976); Pacheco v. Rice, 966 F.2d 904, 905 (5th Cir. 1992); Henderson v. United States Veterans Admin., 790 F.2d 436, 439 (5th Cir. 1986).  Section 2000e-16(c) gives a federal employee the right to file suit in federal court, but mandates that to do so the employee must first pursue and exhaust administrative remedies against his federal employer. Randel v. United States Dep't of Navy, 157 F.3d 392, 395 (5th Cir.

-11-

1998); <u>Fitzgerald v. Secretary, U.S. Dep't of Veterans Affairs</u>, 121 F.3d 203, 206 (5th Cir. 1997); <u>Barnes v. Levitt</u>, 118 F.3d 404, 408 (5th Cir. 1997).   Only when a federal employee exhausts his administrative remedies does a district court have jurisdiction to entertain his subsequent Title VII action.   <u>Randel</u>, 157 F.3d at 395; <u>Dollis v. Rubin</u>, 77 F.3d 777, 781 (5th Cir. 1995); <u>Francis v. Brown</u>, 58 F.3d 191, 192 (5th Cir. 1995); <u>Tolbert v. United States</u>, 916 F.2d 245, 247 (5th Cir. 1990); <u>Hampton v. IRS</u>, 913 F.2d 180, 182 (5th Cir. 1990); <u>Prewitt v. United States Postal Serv.</u>, 662 F.2d 292, 303 (5th Cir. 1981).

To exhaust his remedies at the administrative level, a federal employee must satisfy the "rigorous administrative exhaustion requirements and time limitations" set out in section 717.   <u>Brown</u>, 425 U.S. at 829.   First, the employee is required to contact the federal agency's EEO counselor within forty-five days of the alleged discriminatory action and request informal counseling.   29 C.F.R. § 1614.105(a)(1);[37] <u>see also</u> <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).[38]   The EEO counselor must conduct a final interview with the employee no later than thirty days after the date the aggrieved employee contacted the agency's EEO office.   29 C.F.R. § 1614.105(d).   If no informal resolution within the agency

---

[37]The EEOC, the agency that administers and enforces Title VII, has promulgated various regulations governing the processing of a complaint, pursuant to the authority granted it in 42 U.S.C. § 2000e-16(b).

[38]In the case of an alleged discriminatory personnel action, the employee has forty-five days from the effective date of the action to consult an EEO counselor.   29 C.F.R. § 1614.105(a)(1).

is forthcoming, the EEO counselor issues a written notification to the employee informing him of the right to file a formal complaint of discrimination with the agency.  Id. § 1614.105(d).

Within fifteen calendar days of receiving this notification the employee must file a complaint of employment discrimination with the agency's EEO office.  Id. § 1614.106(b); see also Barnes v. Levitt, 118 F.3d 404, 408 (5th Cir. 1997); Hoffman v. Boeing, 596 F.2d 683, 685 (5th Cir. 1979).  If the employee fails to file the complaint within the fifteen-day limit, the agency is required to dismiss the entire complaint.  29 C.F.R. § 1614.107(a)(2).  If the agency does not reach the merits of the complaint because the federal employee fails to follow one or more steps of the administrative process, the district court may not reach the merits of the claim.  Barnes, 118 F.3d at 408; Johnson v. Bergland, 614 F.2d 415, 418 (5th Cir. 1980).  Stated another way, if the employee fails to exhaust administrative remedies because of non-adherence to administrative procedures, the district court does not have jurisdiction to consider his claims.  Fitzgerald, 121 F.3d at 206; Tolbert, 916 F.2d at 248.

It is a well-established principle that the allegations in a judicial complaint filed pursuant to Title VII are limited by charges of discrimination "like or related to" the allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission.  Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).

-13-

In his EEOC complaint, Plaintiff alleged that Defendant discriminated against him on the basis of his age and race when it failed to promote him in August of 2002 and harassed him by convening boards of investigation in September of 2002. These were the charges that were investigated at the administrative level without objection from Plaintiff. The allegations of retaliation and proposed removal/demotion are not "like or related to" the promotion and harassment/hostile work environment allegations. Plaintiff has failed to respond to Defendant's motion to dismiss and thus has failed to raise any argument that the retaliation and proposed removal/demotion charges have been administratively exhausted.

Accordingly, the court concludes that it lacks subject matter jurisdiction over Plaintiff's proposed removal/demotion and retaliation claims because Plaintiff failed to raise these claims administratively prior to the institution of this action. See Clayton v. Rumsfeld, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (finding that former employee failed to raise the issue of her constructive discharge in the administrative process, and thus, was precluded from pursuing that claim in her Title VII suit).

**B.   Defendant's Motion for Summary Judgment**

1.   Failure to Promote

Federal employees are protected from discriminatory personnel actions based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Disparate treatment claims require proof

of intentional discrimination.  <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 986 (5th Cir. 1988).   In the absence of direct evidence of discrimination, Title VII claims are analyzed under the familiar burden-shifting approach originally articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>West v. Nabors Drilling USA, Inc.</u>, 330 F.3d 379, 384 (5th Cir. 2003).

In the context of a failure to promote claim, a plaintiff must prove that (1) he is a member of a protected class; (2) that he was qualified for the position for which he applied; (3) that he was not hired for the position sought; and (4) that the employer persisted in interviewing and hiring applicants with qualifications comparable to those possessed by Plaintiff,[39] or that others similarly situated were more favorably treated.[40]

A plaintiff may trigger a presumption of discrimination by establishing all of the elements of a <u>prima facie</u> case.  <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002).  The burden then shifts to the defendant to proffer legitimate, nondiscriminatory reasons for the employment action.  <u>Id.</u>

If the defendant meets this burden of production, the presumption dissolves and the burden shifts back to the plaintiff. <u>Id.</u>; <u>see also</u> <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 897-98 (5th Cir. 2002), <u>cert. denied</u>, 539 U.S. 926 (2003) (emphasizing the defendant's burden is one of production, not

---

[39]<u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 317 (5th Cir. 2004).

[40]<u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 609 (5th Cir. 2005).

persuasion).  According to the Fifth Circuit's recent modification of the analysis, the plaintiff's burden then is to produce some evidence suggesting "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)."  Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citations, internal quotation marks, and internal alterations omitted).  If the plaintiff shows illegal discrimination was a motivating factor, the defendant must respond with evidence that the same decision would have been made regardless of discriminatory animus.  Id.

The key to the factual assessment is whether the employer discriminated against the plaintiff on the basis of race.  Pratt v. City of Houston, 247 F.3d 601, 606 (5th Cir. 2001), cert. denied, 540 U.S. 1005 (2003).  An employee's subjective belief that he has been the victim of discrimination is insufficient to create an inference of discriminatory intent.  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999).  The court will grant judgment in favor of the employer if the evidence, taken as a whole, would not allow a jury to infer that the reason for the adverse employment action, at least in part, was discriminatory. See Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

-16-

The Age Discrimination in Employment Act ("ADEA") provides in relevant part that

> It shall be unlawful for an employer–
>
> > (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.

29 U.S.C. § 623(a).   Claims under the ADEA are analyzed under the Title VII burden-shifting framework.   <u>See</u> <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 83 (5th Cir. 1995).

In his motion for summary judgment Defendant concedes that Plaintiff is a member of a protected class, was qualified for the position sought, and was not selected for promotion.   Defendant argues that Plaintiff has not alleged facts to support the fourth element of a <u>prima facie</u> case -- the requirement of less favorable treatment.   Defendant argues that each candidate for promotion was treated the same, that is, each was interviewed by the same interview panel, using the same questions and criteria for each candidate.

The court agrees that there is no evidence that the interview panel treated Plaintiff differently than other applicants.   But the court does not understand Plaintiff to complain that the promotion process itself was discriminatory.   Rather, Plaintiff argues that because the person selected was of a different race and age, Plaintiff was treated less favorably than he.   The court will

assume that Plaintiff has alleged a <u>prima facie</u> case of discrimination.

Proceeding to the second prong of the <u>McDonnell Douglas</u> analysis, the summary judgment evidence provides ample support for Defendant's proffered legitimate, non-discriminatory reason for Plaintiff's non-selection.  Susan Dierker, chair of the promotion advisory committee, stated that the committee selected interview questions from the High Performance Development Model ("HPDM")[41] and agreed that each candidate would be asked the same questions.[42] Each committee member reviewed an applicant's paperwork, and ranked each person on his or her educational background and supervisory experience.[43]  The committee also agreed that the oral interview would have a greater weight than the other two categories because it gave them the opportunity to see how the applicant presented himself or herself and answered the questions.[44]  Each committee member independently scored the candidates' interviews.  After all interviews were completed, the committee discussed the candidates and came to a consensus on the recommendation for promotion.[45]

---

[41]The HPDM was an interview model that allowed an interviewing panel to select questions from the following categories:  (a) flexibility; (b) inter-personal effectiveness; (c) personal mastery; (d) systems thinking; (e) technical skills; (f) creative thinking; (g) organizational stewardship; and (h) customer service.  Appendix, Ex. 5, "Declaration of Adam Walmus."

[42]Appendix, Ex. 6, "Declaration of Susan Dierker."

[43]<u>Id.</u>

[44]<u>Id.</u>

[45]<u>Id.</u>

Dierker stated that the committee recommended the promotion of Officer Phillip Prater because he was prepared for the interview, was articulate in his answers to the questions, and made a professional impression.[46]  In contrast, Dierker stated that Plaintiff began his interview by recommending another officer for promotion.  Dierker characterized Plaintiff as not cooperative, difficult, and at times, aggressive, in his responses to interview questions.[47]  Dierker averred that neither Chief Forde nor Walmus influenced the committee in its recommendation of Officer Prater for promotion.[48]  Chief Forde accepted the committee's recommendation and Prater was promoted.

The court concludes that Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's non-selection.  The Fifth Circuit has noted that in the context of proving pretext, a plaintiff has a very high burden to establish that he is clearly more qualified than the person who actually received the promotion.  Celestine v. Petroleos de Venezuela, 266 F.3d 343, 357 (5th Cir. 2001).  Since Plaintiff has failed to respond to Defendant's motion for summary judgment, he has failed to put forth any evidence to suggest that Defendant's reasons for Plaintiff's non-selection were pretextual or that he was clearly

---

[46]Id.

[47]Id.

[48]Id.

more qualified than the officer actually promoted.  Defendant is entitled to judgment on Plaintiff's failure to promote claim.

  2.  Harassment/Hostile Work Environment

  In his informal complaint of discrimination, Plaintiff complained that he was subjected to harassment when he was not selected for promotion.[49]  In his formal complaint, he also requested that Defendant "cease harassment by boards."[50]  The Defendant investigated these two complaints under the heading harassment.[51] As defined by the Defendant, harassment is equivalent to a hostile work environment.[52]

  To establish a prima facie case of a hostile work environment based on race or age a plaintiff must show that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon his race or age; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment

_____

  [49]See Appendix, Ex. 29.

  [50]See Appendix, Ex. 1.

  [51]See Appendix, Ex. 2.

  [52]See Appendix, Ex. 3, "Final Agency Decision or Order."  Citing only EEOC decisions, the agency stated that to prove a prima facie case of harassment the complainant must show (1) membership in a protected class; (2) unwelcome personal slurs or other denigrating or insulting verbal or physical conduct; (3) that the harassment complained of was based on the complainant's membership in the protected class; and (4) that the harassment was sufficiently severe or pervasive to affect a term or condition of employment, and/or that the harassment had the purpose or effect of unreasonably interfering with complainant's work performance and/or that the harassment had the purpose or effect of creating an intimidating, hostile, or offensive work environment.  Id., p. 6.

-20-

and failed to take prompt remedial action. <u>Celestine</u>, 266 F.3d at 353 (Title VII); <u>Felton v. Polles</u>, 315 F.3d 470, 484 (5th Cir. 2002) (Section 1981).    When the harassment in question was allegedly committed by a supervisor with immediate or successively higher authority over the plaintiff, the fifth element need not be established. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998); <u>Celestine</u>, 266 F.3d at 353; <u>Felton</u>, 315 F.3d at 484.   Here, plaintiff alleges that he was harassed by his supervisor, the chief of police.

To establish that harassment affected a "term, condition, or privilege" of employment, a plaintiff must show that discriminatory words or conduct were "sufficiently severe or pervasive, so as to alter the conditions of employment and create an abusive working environment."   <u>Celestine</u>, 266 F.3d at 353 (internal quotations omitted).   In addition, the plaintiff must demonstrate that his work environment was both subjectively and objectively offensive, i.e., the plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993).   When determining whether a workplace is "hostile" or "abusive," courts examine all relevant circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

-21-

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Walker v. Thompson</u>, 214 F.3d 615, 625 (5th Cir. 2000) (quoting <u>Harris</u>, 510 U.S. at 23).

The court has reviewed the Plaintiff's allegations and considered all of the relevant evidence. The court concludes that the evidence does not raise an issue of material fact on his hostile work environment claim.

Plaintiff alleges only that he was not promoted and was harassed by boards of investigation. The summary judgment evidence reveals that Plaintiff was the subject of two separate complaints by veterans concerning his on-the-job conduct. These complaints were investigated by the BOI and were sustained based on testimony of eyewitnesses. The record reflects that Plaintiff had an opportunity to respond to both complaints.[53] The court estimates that Plaintiff's interview with the board did not exceed a total of two hours, which does not raise a fact issue that the BOI unreasonably interfered with his work performance. The court has also recounted the facts concerning Plaintiff's non-selection for promotion. Neither instance raises a fact issue of harassment that affected a "term, condition or privilege of employment." Accordingly, Plaintiff's hostile work environment claim has no merit.

---

[53]See Appendix, Exs. 18, 26.

## IV.  <u>Conclusion and Order</u>

Defendant's Motion to Dismiss (Docket Entry No. 18) and Defendant's Motion for Summary Judgment (Docket Entry No. 19) are **GRANTED.**

**SIGNED** in Houston, Texas, on this the 18th day of May, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE